UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA,

v.  CRIMINAL ACTION NO. 4:15cr18

NADER ABDALLAH, et al.,

Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Nader Abdallah's Motion to Suppress on Fifth Amendment grounds (ECF Nos. 164, 245). This Memorandum Opinion and Order expiates the Courts' ruling from the bench. The Court held a hearing on the Motion to Suppress and other outstanding pretrial motions on July 15, 2016. Defendant requests suppression of his statements he alleges were made in violation of *Miranda* and his Fifth Amendment right against self-incrimination. Having reviewed the pleadings and held a hearing on the Motion to Suppress, this matter is now ripe for judicial determination. For the reasons stated on the record and herein, Defendant's Motion to Suppress is **DENIED**.

### I. PROCEDURAL AND FACTUAL HISTORY

On April 20, 2015, Defendant was arrested and taken into custody as a result of an investigation of the distribution of spice, a controlled substance analogue mimicking the effects of marijuana. Prior to beginning questioning at the Newport News Police Headquarters, Homeland Security Special Agent Lewis began reading Defendant his *Miranda* rights. However, before completion of the *Miranda* warning, Defendant interrupted Agent Lewis and stated that he "wasn't going to say anything at all." Agent Lewis then completed the *Miranda* warning and

1

asked Defendant whether he knew why he was under arrest. Defendant replied that he did not. Agent Lewis repeated the *Miranda* warning and proceeded to discuss the charges and obtain a statement from the Defendant.

On February 10, 2016, Defendant Nader Abdallah was named in a 38 count Second Superseding Indictment along with eleven other defendants. ECF No. 205. The Second Superseding Indictment names Defendant Nader Abdallah in Counts 1-3. *Id.* A trial for this matter is scheduled for September 13, 2016.

On December 16, 2015, Defendant Nader Abdallah, through counsel, filed his first Motion to Suppress. ECF No. 164. On December 28, 2015, the Government filed its Response in Opposition. ECF No. 178. On April 1, 2016, Defendant, through newly appointed counsel, filed a second Motion to Suppress on the same Fifth Amendment grounds as the initial motion. ECF No. 245. On April 12, 2016, the Government filed its Response in Opposition. ECF No. 262.

## II. LEGAL STANDARD

In deciding a motion to suppress, the district court is empowered to make findings of fact and conclusions of law. *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005) (citations omitted). "At a hearing on a motion to suppress, the credibility of the witness and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. McKneely*, 6 F.3d 1447, 1452-53 (10th Cir. 1993); *see also United States v. Massey*, 257 F. App'x 662, 664 (4th Cir. 2007); *Columbus-Am. Discovery Group v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 567 (4th Cir. 1995).

As a general rule, the burden of proof is on the defendant who seeks to suppress the

2

evidence. *United States v. Dickerson*, 655 F.2d 559, 561(4th Cir. 1981). Once the defendant establishes a basis for his suppression motion, the burden shifts to the government. *United States v. Matlock*, 415 U.S. 164, 177-78 n.14 (1974). Where a defendant seeks to suppress a statement under *Miranda v. Arizona*, 384 U.S. 436 (1966), the government bears the burden of establishing by a preponderance of the evidence that the statement was not the product of custodial interrogation conducted in the absence of *Miranda* warnings. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *Matlock*, 415 U.S. at 178.

### III. DISCUSSION

In this case, Defendant asserts that the agents unlawfully questioned him after he invoked his Fifth Amendment right to remain silent. The Government contends that the questioning was lawful because Defendant willingly spoke with officers after being informed of his *Miranda* rights a second time and waiving those rights. At issue is whether the Defendant unequivocally invoked his Fifth Amendment right to remain silent and whether Defendant knowingly and voluntarily waived his *Miranda* rights.

A defendant must be informed of his rights through a *Miranda* warning before law enforcement may properly conduct a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Specifically, "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* "The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* If law enforcement does not administer *Miranda* warnings before they question a person in custody, evidence resulting from

the questioning must be suppressed. However, "[t]he defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." *Id.*

Whether a suspect has voluntarily, knowingly, and intelligently waived his rights under *Miranda* is examined by the "totality of the circumstances surrounding the interrogation." *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *see also United States v. Robinson*, 404 F.3d 850, 860 (4th Cir. 2005). The Fourth Circuit has articulated a two-step inquiry. First, a court must find that "the relinquishment of the right 'must have been voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception,'" *United States v. Shanklin*, 2013 WL 6019216 at *3 (E.D. Va. Nov. 13, 2013) (quoting *United States v. Cristobal*, 293 F.3d 134, 139 (4th Cir. 2002)). Second, the district court must find that the waiver was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Id.* (quoting *Cristobal*, 293 F.3d at 140). When analyzing the totality of the circumstances, courts have considered such factors as the suspect's "intelligence and education," his "age and familiarity with the criminal justice system," and "the proximity of the waiver to the giving of the *Miranda* warnings." *Poyner v. Murray*, 964 F.2d 1404, 1413 (4th Cir. 1992).

A waiver of *Miranda* rights can be made expressly or can be implied "from the actions and words of the person interrogated." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979) (holding that an express waiver of *Miranda* rights is not required for police interrogation so long as a suspect is "adequately and effectively apprised of his rights"). The Court noted that a waiver may be implied through a "defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver." *Id.* at 373. The Court also emphasized that the adequacy of a waiver is determined based on "the particular facts and circumstances

4

surrounding that case, including the background, experience, and conduct of the accused." *Id.*

However, invocation of *Miranda* rights must be unambiguous. *Davis v. United States*, 512 U.S. 452, 459 (1994) (holding that a suspect must unambiguously request counsel); *Berghuis v. Thompkins*, 560 U.S. 370, 387 (2010) (holding that a suspect must unambiguously invoke the right to remain silent). In *Berghuis*, the Supreme Court held that a suspect's silence alone is insufficient to constitute invocation of the right to remain silent where the defendant responded to questions three hours after being informed of his *Miranda* rights and the Court found no evidence of coercion. 560 U.S. at 387. The Court found, "If the accused makes an 'ambiguous or equivocal' statement or no statement, the police are not required to end the interrogation, [] or ask questions to clarify the accused's intent." *Id.* (citing *Davis*, 512 U.S. at 461-62). The Court further explained, "The unambiguous invocation requirement results in an objective inquiry that 'avoid[s] difficulties of proof and ... provide[s] guidance to officers' on how to proceed in the face of ambiguity." *Id.*

Once an individual invokes the right to remain silent, "the interrogation must cease." *Miranda v. Arizona*, 384 U.S. 436, 474 (1966). The admissibility of statements made after invocation of the right to remain silent depends on whether "[the] right to cut off questioning was 'scrupulously honored.'" *Michigan v. Mosley*, 423 U.S. 96, 104-107 (1975). The Fourth Circuit has enumerated several factors for district courts to consider in determining whether a defendant's invocation of the right to remain silent was honored including:

> (1) whether the police had given the suspect *Miranda* warnings at the first interrogation and the suspect acknowledged that he understood the warnings;
>
> (2) whether the police immediately ceased the interrogation when the suspect indicated that he did not want to answer questions;

5

(3) whether the police resumed questioning the suspect only after the passage of a significant period of time;

(4) whether the police provided a fresh set of *Miranda* warnings before the second interrogation; and

(5) whether the second interrogation was restricted to a crime that had not been a subject of the earlier interrogation.

*Weeks v. Angelone*, 176 F.3d 249, 267 (4th Cir. 1999), *aff'd,* 528 U.S. 225 (2000) (citing *Mosley*, 423 U.S. at 104-107). Failure to satisfy certain factors is not dispositive. *Id.* at 268. There is no bright-line test, "[i]nstead, the touchstone is whether a 'review of the circumstances' leading up to the suspect's confession reveals that his 'right to cut off questioning was fully respected.'" *Id.* (quoting *Mosley*, 423 U.S. at 104).

With respect to the third factor, the court noted that a significant period of time between interrogations does not require a durational minimum but defined a significant period of time as "a function of to what degree the police 'persist[ed] in repeated efforts to wear down [the suspect's] resistance and make him change his mind.'" *Id.* (quoting *Mosley*, 423 U.S. at 105–06). With respect to the fifth factor, the court also noted that when other factors are met "the mere fact that a second interrogation involves the same crime as the first interrogation does not necessarily render a confession derived from the second interrogation unconstitutionally invalid under *Mosley*." *Id.*

In *Weeks*, the court upheld admission of the defendant's confession after the defendant initially cut off questioning but hours later confessed in response to questions from officers regarding his mental health while placing him under arrest. *Id.* at 267. During the initial interrogation, the defendant was advised of *Miranda* rights and questioning ceased immediately

after defendant invoked his right to remain silent. *Id.* at 268. Approximately ten hours lapsed between the first and second interrogation. *Id.* The defendant was not advised of his *Miranda* rights prior to the second interrogation but responded affirmatively when asked if he remembered the rights he was read during the first interrogation. *Id.* The first and second interrogation involved the same murder crime. *Id.* As a result, the court held that under the totality of the circumstances it was reasonable to conclude the police honored the defendant's right to cut off questioning. *Id.* at 269.

Here, the Defendant argues that the circumstances reveal his right to cut off questioning was not fully respected. First, Defendant alleges that the agent's notes indicate discrepancies regarding Defendant's understanding, his state of mind, and impairment. Defendant references discussion of his drug use during the interrogation, which he argues may have affected his ability to understand the warnings. Second, Defendant argues that his statement that he "was not going to say anything at all" was a clear indication that he did not want to answer questions and the agents should have ceased questioning at that point. Defendant asserts that the agents instilled fear in him after he initially invoked the right to remain silent by discussing the depth of the investigation and nature of the charges against him. Third, Defendant argues there was no passage in time between his invocation of the right to remain silent because the agent immediately asked if Defendant knew why he was arrested. Lastly, Defendant argues that the agents continued to question Defendant regarding the same crime of distribution of spice. Accordingly, Defendant requests that his statements he alleges were obtained in violation of the procedural guidelines in *Miranda* and his Fifth Amendment right against self-incrimination be suppressed.

In response, the Government first contends that Defendant's interjection that he "wasn't

going to say anything at all" did not unambiguously invoke his right to remain silent given the totality of the circumstances. Second, the Government argues that even if considered an unambiguous invocation, it was not a knowing and intelligent invocation because the officer had not completed the *Miranda* warning. Lastly, the Government asserts that the totality of the, circumstances, including the events following the interjection, show Defendant's intent to waive his *Miranda* rights.

The Government also cites numerous cases from other circuits where similar language was not considered an unequivocal invocation of the right to remain silent. *See United States v. Shi*, 525 F.3d 709, 729-30 (9th Cir. 2008) (agent not required to end interrogation when suspect said "I don't want to talk about the accident" because suspect continued to respond to questions); *United States v. Sherrod*, 445 F.3d 980 (7th Cir. 2006) (finding defendant did not unequivocally invoke his right to remain silent where defendant interrupted *Miranda* warning to say "I'm not going to talk about nothing" but proceeded to ask what the charges against him were and executed a written *Miranda* waiver); *United States v. Banks*, 78 F.3d 1190, 1197-98 (7th Cir. 1996) (suspect's response while in the back of a police car to a *Miranda* waiver form stating "I don't got nothing to say" was an angry response that did not clearly invoke the right to remain silent).

In *U.S. v. Pettiford*, Defendant initially invoked his right to remain silent, but the court found Defendant knowingly, voluntarily, and intelligently waived his *Miranda* rights when an hour later he made statements after a detective brought a gun that was recovered into the room. 295 F. Supp. 2d 552 (D. Md. 2003). The detective initiated the second round of questioning before reading the defendant his rights a second time, but the defendant was re-Mirandized before he provided any incriminating statements. *Id.* at 564. The court stated, "it is doubtful that Pettiford had forgotten his rights during the one-hour interval. ... In addition, the fact that Pettiford provided his statement to Detective Jenkins, who was present when Pettiford previously

invoked his right to remain silent, demonstrates that he was comfortable exercising his right and that the decision to later waive it was voluntary and not the product of coercion." *Id.*

Similarly here, based on the totality of the circumstances, the Court finds the Defendant knowingly and voluntarily waived his *Miranda* rights after being informed of them twice. Defendant's initial statement that he "wasn't going to say anything" was ambiguous, especially given the fact that he voluntarily waived his *Miranda* rights minutes later once informed of the charges against him and the subject of the interrogation. Further, the Defendant affirmed that he understood his rights and was not under the influence of drugs as he informed the agents that he had not used drugs the night before he was arrested. Defendant presented no evidence that he was under the influence of drugs and did not understand his rights or any evidence of coercion.

The Court heard evidence through testimony from Homeland Security Special Agent Lewis and Postal Inspector Agent Sylvester. Both agents testified that after Defendant interrupted the first *Miranda* warning saying he "wasn't going to say anything at all," Agent Lewis asked the Defendant if he knew why he was under arrest prior to repeating the *Miranda* warning and explaining the charges against the Defendant. The agents also testified that the Defendant appeared "lucid" and "jovial" and did not appear to be under the influence of drugs.

With respect to the *Weeks* factors, there was not a significant passage of time between the first statement and the interrogation and they concerned the same crime. However, these factors are not dispositive because the officer repeated the *Miranda* warning and obtained a waiver from the Defendant prior to discussing the details of the charges and investigation against Defendant and commencing the interrogation. Additionally, the agent did not ask the Defendant any questions in the initial inquiry because the Defendant cut him off during the *Miranda* warning. Therefore, Defendant was not even aware of the subject of the interrogation at the time of his

initial statement. The agent appropriately informed the Defendant of the charges against him. Furthermore, the agent obtained a knowing and voluntary waiver of *Miranda* rights from the Defendant prior to discussing the charges and making any statements regarding the subject of the interrogation. Accordingly, Defendant's Motion to Suppress is **DENIED**.

## IV. CONCLUSION

The Defendant did not unequivocally invoke his Fifth Amendment right to remain silent. Further, the Defendant has not established that his right to cut off questioning was not "scrupulously honored" and that he did not make a knowing and voluntary waiver of his *Miranda* rights. Accordingly, for the reasons stated on the record and herein, Defendant's Motion to Suppress is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Order to counsel for the Parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
July 21, 2016
*Nunc Pro Tunc*
July 15, 2016

Raymond A. Jackson
United States District Judge